No. 18,678.

NATHAN A. CLARK, *Appellant*, v. GEORGE SHOESMITH,
as Executor, etc., et al., *Appellees*.

SYLLABUS BY THE COURT.

1. APPEAL—*Motion to Dismiss for Want of Proper Parties De-
   nied.* Under section 569 of the civil code the appearing de-
   fendants can not rightfully demand the dismissal of an ap-
   peal because other parties whose rights are sought to be
   affected but who did not appear or take part in the trial be-
   low were not served with notice of the appeal.

2. PETITION—*To Have Deed Declared a Mortgage—Not De-
   murrable — Statute of Limitations — Nonresidence — Laches.*
   The plaintiff alleged in substance that some twelve years be-
   fore he had deeded certain land to his brother-in-law to se-
   cure the payment of a loan from him on the oral agreement

that a reconveyance should be made upon full payment—the grantee to have possession, the crops and proceeds of the land to apply on the debt, which was to draw a specified rate of interest; that subsequently the proceeds were retained and a certain payment made, and that the indebtedness had been largely overpaid; that repeatedly a reconveyance had been requested and promised but none had been made, and that the grantee about a year before the bringing of the action had died leaving a will attempting to devise the land to various named defendants, who lived in another state, where the testator lived and died and where the defendant executor also lived. The prayer was for a decree that the deed was made and accepted as a mortgage, that a reconveyance be had, and for an accounting and a judgment for the alleged overpayment. *Held*, that neither the nonresidence of most of the defendants, nor the statute of limitations, nor the laches of the plaintiff rendered such pleading demurrable.

Appeal from Republic district court; JOHN C. HOGIN, judge. Opinion filed March 7, 1914. Reversed.

*John M. Ragan*, of Hastings, Neb., *R. D. Sutherland*, of Nelson, Neb., *W. D. Vance*, and *R. E. McTaggart*, both of Belleville, for the appellant.

*Park B. Pulsifer, Charles L. Hunt*, both of Concordia, and *Nelson J. Ward*, of Belleville, for the appellees.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued in 1910 to have a certain instrument declared a mortgage, for possession of the land covered thereby and for an accounting. He alleged in substance that in 1898 he was the owner of a tract of land in Republic county and a school-land contract in Jewell county, and was then indebted to his brother-in-law, John Shoesmith, in the sum of $4000, the note for which would be due in 1899 and which was secured by mortgage on the Republic county land; that about June, 1898, Shoesmith, who resided in Lena, Ill., visited the plaintiff and his family at Nelson, Neb., and professing a desire to help the plaintiff, orally proposed to lend him $3800 more, take a deed to the land in ques-

tion and an assignment of the school-land certificate as security, and when a purchaser could be found for a part of the land and the plaintiff approved the sale Shoesmith was to deed to such purchaser the land so sold, the proceeds to be credited on the plaintiff's debt; that Shoesmith was to have immediate possession of the lands and receive the crops thereon and credit their value on the plaintiff's debt, plaintiff to have the privilege of paying any part thereof at any time, and when enough should be realized to pay Shoesmith the sum of $7500 with seven per cent interest thereon and for any taxes paid by him and for any sum expended in securing title to the school land a reconveyance was to be made of the part remaining unsold; that in accordance with such oral agreement Shoesmith loaned the plaintiff $3500, taking no note therefor, and the lands were turned over and Shoesmith received the crops, rents and profits; that Shoesmith sold forty acres of the Jewell county land in 1906 for $5000, which sum he retained; that upon taking possession of the land Shoesmith received $1200 worth of grain, and in May, 1899, plaintiff paid him $500 by bank draft; that soon after the transfer of the land to Shoesmith, and frequently thereafter, the plaintiff requested of him an accounting and settlement and reconveyance, which were promised from time to time; that once Shoesmith stated that he had already executed a deed for the Jewell county land and left the same at his office at Lena; that he died in 1909 without having made a settlement, accounting or reconveyance. It was alleged that the debt had been overpaid in the sum of $8000, and the relief already indicated was prayed for; that the deed was made and accepted as security only. After various attacks by motion had been made to the plaintiff's pleadings by the executor and the widow a demurrer to the second amended petition was filed, and after holding the same under advisement for some time the court sustained it, and from this ruling the plaintiff appeals. The execu-

tor of the will of Shoesmith, the widow, the plaintiff's wife, sister of the testator, and certain other beneficiaries under the will were made parties defendant, service being had by publication. Default was made except as to the executor, widow and sister. The latter, the plaintiff's wife, alleged in her answer that the deceased had by will given her one-half of the real estate involved in this action. The will was probated in Illinois, where the testator formerly lived. In addition to the general demurrer, a separate demurrer to that part of the petition relating to an accounting was also filed and sustained.

It is argued that the court had no jurisdiction of that portion of the action relating to an accounting, the parties defendant, with one exception, being nonresidents, and no personal judgment being possible as to them. As to the general demurrer, it is contended that the action is barred by the statute of limitations; that the debt not being evidenced by writing and no time set for payment, was payable on demand, which means at least within a reasonable time, and the action would be barred within three years therefrom. Also, that the action is barred by the laches of the plaintiff, which it is stated had much to do with the sustaining of the demurrer.

It is insisted that the court has no jurisdiction to consider the appeal, for the reason that a number of parties to be affected thereby are not brought in, and a motion to dismiss is pressed. But the statute requires only that a copy of the notice of appeal be served "on all adverse parties whose rights are sought to be affected by the appeal, and who appeared and took part in the trial." (Civ. Code, § 569.) Dismissal, therefore, can not rightfully be demanded. It is urged that the pleading is demurrable in so far as it relates to an accounting, as the estate and most of the devisees are in Illinois, and our courts can not control them. But the land is located here and the suit concerns the

legal title and right of possession, and an accounting would be only incidental to the main purpose of restoring the land to the alleged owner, who would of course have to do equity, and would likewise be entitled to demand that those claiming the land under the will also do equity. At least the defendants who have appeared can not deny the jurisdiction of the court to take cognizance of the controversy as to them, though what final orders or judgment it shall make or render may depend on matters not yet disclosed.

It is insisted that for various reasons the action is barred. But taking the allegations of the plaintiff as true, for the purpose of the demurrer, we have the undisputed averment that Shoesmith upon his own offer took the legal title to hold until repaid, and instead of a claim of ownership or denial of his trusteeship we find actual and repeated promises to reconvey which, taken at their face value, show a continued recognition and practical assertion of his trusteeship of the legal title, and so long as this state of affairs continued the statute would not run. This was decided in *Hunter v. Coffman,* 74 Kan. 308, 86 Pac. 451, which decision remains the unmodified rule. It was said:

"Until there was a renunciation of the trust, or some declaration or act to manifest a claim to hold adversely, there could be no adverse holding. . . . The statute, it is clear, did not begin to run until the notice of the adverse holding or denial of the trust was given." (pp. 310, 311.)

While the numerous decisions cited by the defendants would apply in certain circumstances the rule in the Hunter case meets the situation presented by the plaintiff's allegations, and must be followed.

Lastly, it is argued that the action is barred by the plaintiff's laches, and many authorities are cited. This is an equitable defense, which means that for the plaintiff to proceed at so late a date would be inequitable to the defendant, unfair or unjust. But how could the

51—91 KAN.

testator in this case, if living, argue that having repeatedly promised his brother-in-law to reconvey he should not be compelled to do so now; and of course the defendants, claiming under him, stand in his shoes. If, as alleged, the requests for and promises of a reconveyance were made over and over again each operated as a notice or reminder to the testator that the plaintiff was claiming the right to a reconveyance—the legal title—and under the rule laid down in *Dusenbery v. Bidwell*, 86 Kan. 666, 121 Pac. 1098, there is nothing appearing on the face of the pleading in question which shows such laches as to bar the right of the plaintiff to proceed.

It is suggested that the attempt to dispose of the property by will shows a claim of ownership. But the will appears to have been made only about one year prior to the beginning of the action, and on no theory could the action be barred in that length of time after assertion of title. It is also pointed out that by delaying until death and the legislature having taken away one witness and made another competent the plaintiff has secured an undue advantage, and his allegations are deemed by the defendants unreasonable and unbelievable. But of course allegations are not proof, and upon a trial the real facts, whatever they are, will doubtless be disclosed.

But taking the allegations as true, we hold that they state a cause of action, and the judgment is therefore reversed and the cause remanded for further proceedings.